Bruce BLISS, et al., Plaintiffs

v.

Mark FISHER, et al., Defendants.

Civil Action No. 10–10252–EFH.

United States District Court,
D. Massachusetts.

Jan. 31, 2012.

Order Denying Motion to Amend
April 15, 2012.

Francis M. O'Boy, Law Offices of Francis M. O'Boy, Taunton, MA, for Plaintiffs.

William T. Bogaert, John J. Davis, Wilson, Elser, Moskowitz, Edelman & Dicker LLP, John J. Cloherty, III, Jason W. Crotty, John J. Davis, Pierce, Davis & Perritano, LLP, Jackie A. Cowin, Joseph L. Tehan, Jr., Kopelman & Paige, PC, Boston, MA, David C. Manoogian, Attorney at Law, Attleboro, MA, for Defendants.

### MEMORANDUM AND ORDER

HARRINGTON, Senior District Judge.

This matter comes before the Court on the Defendants' motions for summary judgment. The case arises from the criminal prosecution of the Plaintiffs, three former commissioners of the North Attleborough Electric Department ("NAED"), for their alleged misuse of certain municipal bond funds. The Defendants are the Town of North Attleborough, the NAED and various North Attleborough town officials, including members of the North Attleborough Board of Selectmen, whom Plaintiffs assert facilitated a baseless criminal prosecution against them. Plaintiffs claim violations of 42 U.S.C. § 1983, Mass. Gen. Laws ch. 12, § 11I, as well as malicious prosecution and reckless or intentional infliction of emotional distress under Massachusetts common law. For the reasons set forth below, the Court allows the Defendants' motions for summary judgment.

*Background.*

The parties have submitted a comprehensive record which the Court has fully reviewed. The extensive circumstances which led to the present lawsuit have been, in large part, set forth in two prior discovery rulings. *See Bliss v. Fisher,* 714

F.Supp.2d 223 (D.Mass.2010); *Bliss v. Fisher* 743 F.Supp.2d 25 (D.Mass.2010). To resolve the present issues before the Court, however, only a brief factual account is necessary. The following undisputed material facts are set forth with the summary judgment standard in mind, viewing the record in the light most favorable to the Plaintiffs.

Plaintiffs were commissioners of the NAED, a publically-owned utility. The day-to-day operations of the NAED are handled by a general manager, who reports to the three-member board of commissioners. At times relevant to this action, David Sweetland was the general manager of the NAED.

In 1988, the Town of North Attleborough approved a twelve million dollar bond to make capital improvements to the Town's electric service. The article authorizing the bond listed five projects for which the bond proceeds could be used. By 1996, a large portion of the bond funds remained unused and the NAED began considering projects on which those funds could be expended. In September of 1996, the Town's legal counsel wrote a letter to Sweetland, which was, in turn, forwarded to the Plaintiffs, iterating the fact that the use of the bond funds for any project not among the five listed in the article could only be authorized by a Town Meeting vote. *See* Mass. Gen. Laws ch. 44, §§ 1, 7–8, 16, 20. Sweetland also sent letters to the Plaintiffs setting forth this fact on July 12, 1996 and January 26, 1998.

In May of 1998, Sweetland presented to the Plaintiffs a memorandum outlining a telecommunications business plan that would install technologies enabling the NAED to become an Internet Service Provider (the "ISP project"). On May 21, 1998, the Plaintiffs voted unanimously to proceed with the ISP project and, between 1998 and 2004, the NAED made expenditures totaling approximately four million dollars to develop the ISP project. NAED invoices for the ISP project, approved by the Plaintiffs, were stamped with a "bond fund" notation when submitted to the Town Accountant for payment. The ISP project was not among the projects listed in the 1988 article and no Town Meeting vote was taken that would have authorized the use of the bond funds for the ISP project.

State law makes it a crime for a town officer to knowingly direct or authorize the use of bond funds for an unauthorized purpose. *See* Mass. Gen. Laws ch. 44, §§ 20, 62. In 2004, the State's Office of the Inspector General launched an investigation into the matter and issued a report concluding that the Plaintiffs and Sweetland had violated state law. The matter was, in turn, referred to the District Attorney's office and a clerk-magistrate found probable cause to issue complaints against the Plaintiffs and Sweetland. A Massachusetts District Court judge subsequently found probable cause to deny a motion to dismiss that was filed by the Plaintiffs.

Sweetland's trial was severed from the Plaintiffs' trial and proceeded first. On the third day of Sweetland's trial, an allegedly exculpatory videotape of a 1998 public meeting of the Board of Selectmen was discovered by defense counsel. As explicated below, the Plaintiffs' present claims hinge on the significance of this videotape, namely whether it would have negated a finding of probable cause to proceed with the prosecution against the Plaintiffs. The videotape depicts Sweetland, in the presence of the Plaintiffs, telling the North Attleborough Board of Selectmen about the ISP project. The videotape contains the following exchange between Sweetland and the Board of Selectmen regarding the use of the bond funds for the ISP project:

*Sweetland:* We're doing two things at once: we're doing internet with dollop (phonetic) counts and we're doing the fiber optics [referring to the ISP project]. So when we put it all together, it's two here and two there. And that is the reason for the four million dollars. Also, that includes the start-up capital and to cover the first couple of years of losses for the revenue side. The business plan projected that it would be about thirty months before there was positive net income, so we had to finance that as well.

*Selectman Fisher:* Now, this four-million-dollar bond issue that we signed was part of a bigger bond authorization at town meeting. Correct?

*Sweetland:* We were authorized many, many years ago for twelve million dollars, and—

*Selectman Fisher:* And this is the end of it, if I—

*Sweetland:* That's correct.

As a result of the discovery of the videotape, the prosecution withdrew the complaint against Sweetland and the trial judge entered a finding of not guilty. Despite the termination of Sweetland's case, however, the prosecution against the Plaintiffs proceeded. The Plaintiffs were ultimately found not guilty after the trial judge granted a motion for a directed verdict.

The Plaintiffs filed the present action in the Massachusetts Superior Court on January 8, 2010. The matter was removed to this Court on February 12, 2010. The complaint alleges that the Defendants violated § 1983 by (1) prosecuting them in retaliation for exercising protected speech in violation of the First Amendment; (2) withholding exculpatory evidence in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (3) maliciously prosecuting them in violation of the Fourth and Fourteenth Amend-

ments. The complaint further claims parallel violations under the analogous provision of the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12 § 11I, as well as common law claims for malicious prosecution and reckless or intentional infliction of emotional distress. The complaint also includes a count of municipal liability under § 1983 against the Town.

*Analysis.*

■ The Plaintiffs' malicious prosecution claims, First Amendment retaliatory prosecution claims, and emotional distress claims hinge on the issue of whether probable cause existed to institute criminal proceedings. Specifically, those claims are predicated on the allegation that criminal complaints would not have issued had the videotape discovered at Sweetland's trial been disclosed to the clerk-magistrate at the time of the show-cause hearing. Without necessitating any further analysis, these claims fail for the simple reason that the videotape does not, as Plaintiffs assert, negate a finding of probable cause. In fact, the videotape bolsters such a finding.

■ Probable cause has been defined as " 'such a state of facts in the mind of the defendant as would lead a person of ordinary caution and prudence to believe, or entertain an honest and strong suspicion,' that the plaintiff has committed a crime." *Bednarz v. Bednarz,* 27 Mass.App.Ct. 668, 672, 542 N.E.2d 300, 302 (Mass.App.Ct. 1989) (quoting *Lincoln v. Shea,* 361 Mass. 1, 277 N.E.2d 699 (1972)) (internal alterations omitted). The elements of the criminal violation under which the Plaintiffs were prosecuted in state court are (1) the knowing (2) direction or authorization of the use of bond funds (3) for an unauthorized purpose. *See* Mass. Gen. Laws ch. 44, §§ 20, 62.

The videotape depicts Sweetland, in the presence of the Plaintiffs, telling the Board of Selectmen about the use of the bond funds for the ISP project. Under Massa-

chusetts law, however, the Board of Selectmen could not have authorized the use of the bond funds for the ISP project; that authorization could only have come from a Town Meeting vote, a fact repeatedly conveyed to the Plaintiffs. Thus, the Board of Selectman's knowledge of the use of bond funds for the ISP project is immaterial to a finding of probable cause. *See* Mass. Gen. Laws ch. 44, §§ 1, 7–8, 16, 20.

More significantly, however, the videotape actually tends to establish two essential elements of the crime, namely that the bond funds were actually used for the ISP project and that Plaintiffs knew that the funds were being used for the ISP project. The videotape in those important respects supports a finding of probable cause.

Furthermore, both the magistrate and the trial judge had significant pieces of evidence before them supporting each essential element of the crime when determining that probable cause existed, including, among other things, ISP project invoices that were approved by the Plaintiffs and submitted for payment to the Town with "bond fund" notations, as well as letters addressed to the Plaintiffs, iterating the fact that the use of bond funds for any project not among the five listed in the article could only be authorized by a Town Meeting vote. The videotape supplements this evidence. The Court, therefore, holds that Plaintiffs have failed to show a lack of probable cause and that the record supports a finding of probable cause as a matter of law. *See Maher v. Town of Ayer*, 463 F.Supp.2d 117, 120–21 (D.Mass.2006) ("[W]here the historical facts are established or undisputed, the issue [of probable cause] becomes a mixed question of law and fact suitable for determination by the court.").

■ The absence of probable cause is a required element of both malicious prosecution claims, *Nieves v. McSweeney*, 241 F.3d 46, 50 (1st Cir.2001), and First Amendment retaliatory prosecution claims, *Hartman v. Moore*, 547 U.S. 250, 265–66, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006). Since Plaintiffs here have failed to show that probable cause was lacking, those claims are dismissed.[1]

Plaintiffs' emotional distress claims require, among other things, a showing "that the [Defendants'] conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a *civilized community.*" *Howell v. Enter. Publ'g Co., LLC*, 455 Mass. 641, 920 N.E.2d 1, 28 (2010) (internal omissions and quotation marks omitted). Since the Plaintiffs have failed to show a lack of probable cause, the Defendants' alleged instigation of the Plaintiffs' prosecutions cannot be considered extreme and outrages or beyond the bounds of decency. Accordingly, those claims are dismissed.

To the extent Plaintiffs claim that the alleged withholding of the videotape constitutes a violation of the rule set forth in *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), no such claim can be maintained as the Plaintiffs were made aware of the videotape prior to their trial and have made no argument or showing that any delay in its disclosure caused prejudice. *United States v. Watson*, 76 F.3d 4, 8 (1st Cir.1996).

Finally, since Plaintiffs have not set forth evidence establishing the alleged underlying constitutional violations, their municipal liability claims likewise fail. *Nieves v. McSweeney*, 241 F.3d 46, 50 (1st Cir. 2001) (holding that a claim for municipal liability under § 1983 requires, inter alia,

1. Plaintiff's First Amendment retaliatory prosecution claims also fail because the record contains no evidence that the prosecution was instituted, as alleged in the complaint, as a retaliation for the Plaintiffs' opposition to a town charter change that would have given the Board of Selectmen control of the NAED.

proof of an underlying constitutional violation).

The Defendants' Motions for Summary Judgment (Docket Nos. 52, 55 and 62) are, hereby, ALLOWED. The Case is dismissed.

SO ORDERED.

### ORDER OF DISMISSAL

Pursuant to the Court's Memorandum and Order of January 31, 2012, this action is hereby DISMISSED.

SO ORDERED.

### MEMORANDUM AND ORDER

■ This matter comes before the Court on the Plaintiffs' Motion to Alter Judgment Pursuant to F.R.C.P. Rule 59(e) or for Relief from Order Allowing Summary Judgment Pursuant to Fed.R.Civ.P. Rule 60(a), 60(b), § 1, 3, 6. On January 12, 2012, the Court held a hearing on Defendants' motions for summary judgment. The matter was taken under advisement. On January, 17, 2012, the Plaintiffs and a number of the Defendants met for a mediation and reached a tentative resolution. A settlement agreement was prepared and executed by those parties present at the mediation. The agreement contains a provision stating that: "[t]his settlement is subject [sic] the approval of the North Attleborough Board of Selectmen."

On January 26, 2012, the North Attleborough Board of Selectmen (the "Board") met to discuss approval of the settlement, but no decision was rendered at that time. On January 31, 2012, the Court issued a Memorandum and Order allowing the Defendants' motions for summary judgment and dismissing all claims (the "Order"), 842 F.Supp.2d 400. On February 1, 2012,

the Board reconvened and voted to reject the proposed settlement. Plaintiffs filed the present motion on February 27, 2012.

Plaintiffs request the Court to vacate the Order and to enforce the settlement agreement. Plaintiffs set forth a number of arguments in support of their motion. First, Plaintiffs argue that, by executing the settlement agreement, the parties had, in essence, reached a settlement before the Order was issued and that, therefore, the Order should be vacated under Fed.R.Civ.P. 59(e).[1] The record, however, establishes that the Board never approved the settlement pursuant to the express terms of the settlement agreement. Accordingly, no final settlement was accepted by the Defendants either before or after the Order was issued. Furthermore, the record does not establish any bad faith, as alleged by the Plaintiffs, on the part of the Board in its failure to render a decision regarding the settlement on January 26, 2012 or in its postponement of further deliberations on the matter until the following week.

Second, Plaintiffs assert that the Order should be vacated because it would not have been issued had the Court been aware of the settlement agreement. Plaintiffs assert that the issuance of the Order on January 31, 2012 was, therefore, the result of a clerical mistake that can be remedied pursuant to Fed.R.Civ.P. 60(a).[2] Plaintiffs are correct that, had the Court been made aware of the pending settlement negotiations, the issuance of the Order would have likely been postponed. The decision to issue the Order on January 31, 2012, however, is not a clerical mistake under rule 60(a) which requires that the mistake be contained "in a judgment, order, or other part of the record." The decision to issue the Order on that date is

---

1. "Motion to Alter or Amend a Judgment. A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed.R.Civ.P. 59(e).

2. "The court may correct a clerical mistake or a mistake arising from oversight or omission

not a matter contained in the record. Rule 60(a) cannot, therefore, serve as the basis for the relief requested.

Third, Plaintiffs argue that the Order should be vacated under Fed.R.Civ.P. 60(b)(1)[3] because the Plaintiffs' attorney committed excusable neglect in failing to inform the Court of the pending settlement negotiations. Plaintiffs maintain that one of the Defendants' attorneys assured Plaintiffs' attorney that voicemail messages had been left on the court's deputy clerk's answering machine regarding the pending settlement. Plaintiffs contend that their attorney reasonably relied on those assurances. While Plaintiffs' attorney was told that voicemail messages had been left, he was also informed that the Defendants' attorney had not heard back from the deputy clerk and had not received verification that the issuance of the Order would be postponed by the Court. There is no indication in the record that the deputy clerk received the message. Plaintiffs' attorney did not himself attempt to contact the deputy clerk, file a written notice, lodge an electronic docket entry or otherwise take further steps to ensure or to verify that the Court had received the message and intended to postpone its decision. *See de la Torre v. Continental Ins. Co.*, 15 F.3d 12, 15 (1st Cir.1994) ("It is common sense, as well as common courte-sy, to alert the judge to the ongoing negotiations and request that he or she postpone imminent deadlines before they have expired. A litigant who, like appellant, fails to take that simple step courts disaster."). Such a failure cannot serve as the basis for the relief requested under Fed. R.Civ.P. 60(b)(1).

Fourth, Plaintiffs assert that the Order should be vacated under Fed.R.Civ.P. 60(b)(3)[4] and (6)[5] and that the tentative settlement should be enforced because of an alleged misrepresentation made by the Defendants' attorney during the mediation. Plaintiffs assert that Defendants' attorney represented that the Board's approval was required by statute, but that no such statutory requirement existed. Plaintiffs request that the Court, therefore, consider the provision in the settlement agreement requiring approval by the Board to be waived. Defendant's attorney contends that he never stated that approval by the Board was required by statute. Assuming, however, that the Defendants' attorney did state that approval by the Board was required by statute, such an alleged misrepresentation is immaterial. While not required by statute, the approval of the Board was, nevertheless, required by an insurance contract between the Town and its insurer, which had a representative present at the mediation. Therefore, re-

---

whenever one is found in a judgment, order, or other part of the record. The court may do so on motion or on its own, with or without notice. But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave." Fed. R.Civ.P. 60(a).

3. "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect." Fed.R.Civ.P. 60(b)(1).

4. "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons ... (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party." Fed.R.Civ.P. 60(b)(3).

5. "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons ... (6) any other reason that justifies relief." Fed.R.Civ.P. 60(b)(6).

gardless of the source of the obligation, the Defendants would not have executed an agreement that did not contain a term requiring Board approval. Accordingly, the alleged misrepresentation cannot serve as a basis for the relief requested. Since the provision in the settlement agreement requiring Board approval was not waived or otherwise fulfilled, there is no settlement to be enforced.

For the reasons set forth above, Plaintiffs' Motion to Alter Judgment Pursuant to F.R.C.P. Rule 59(e) or for Relief from Order Allowing Summary Judgment Pursuant to Fed.R.Civ.P. Rule 60(a), 60(b), § 1, 3, 6 (Docket No. 89) is, hereby, DENIED.

SO ORDERED.